UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
HENRY HECKMANN,

                            Plaintiff,                  **REPORT AND RECOMMENDATION**

     - against -                                         CV 10-5455 (SJF) (GRB)

THE TOWN OF HEMPSTEAD; NASSAU COUNTY;
RAYMOND SCHWARTZ as Supervisor of Inspection
Services for the Town of Hempstead, personally;
POLICE OFFICER DAMIAN RAMOS, personally;
POLICE OFFICER MICHAEL KEANE, personally;
CODE ENFORCEMENT OFFICER FOR THE
TOWN OF HEMPSTEAD, RALPH VALLAREVELLA,
personally; CODE ENFORCEMENT OFFICER FOR
THE TOWN OF HEMPSTEAD ROBERT STEPPE,
personally; CODE ENFORCEMENT OFFICER FOR
THE TOWN OF HEMPSTEAD, GLEN FORDSMAN,
personally; BUILDING INSPECTOR FOR THE TOWN
OF HEMPSTEAD, ROY GUNTHER, personally;
TOWN OF HEMPSTEAD BUILDING DEPARTMENT
TRAINEE SAL MASTRACCHIO, personally; and
TOWN OF HEMPSTEAD WATER DEPARTMENT
EMPLOYEE TOM BOVE, personally,

                            Defendants.
------------------------------------------------------------------------X

**GARY R. BROWN, Magistrate Judge:**

       In this matter, plaintiff Henry Heckmann ("plaintiff" or "Heckmann") claims that the defendants, including Nassau County and two of its police officers, and the Town of Hempstead and seven Town employees, violated his rights when they declared his home unfit for human habitation, denied him access to the property, boarded it up without giving him an opportunity to address the issues, and excluded him from the property for an indeterminate period of time. Plaintiff filed this lawsuit, alleging causes of action pursuant to 42 U.S.C. §1983, the Americans with Disabilities Act, 42 U.S.C. §12132 (the "ADA"), and state law.

Currently before the Court on referral from District Judge Feuerstein are two motions to dismiss – one submitted by defendant Nassau County and its Police Officers (collectively the "County defendants"), *see* Docket Entry ("DE") [24], and a second by defendant Town of Hempstead and its employees (collectively the "Town defendants"), *see* DE [35]. In addition, plaintiff's motion to voluntarily dismiss two causes of action against certain individual defendants has also been referred. *See* DE [43]. For the reasons set forth herein, it is respectfully recommended that plaintiff's motion be granted, that both motions to dismiss be granted.

## BACKGROUND

### I. FACTUAL ALLEGATIONS

The amended complaint alleges the following facts[1], which are deemed to be true for the purposes of this motion: Plaintiff owns the home located at 862 Front Street, Uniondale, New York and resides there with his sister, Barbara Eaton. Amended Complaint ("Am.Compl.") ¶¶29-30, DE [6]. He has lived at this location for over fifty years. *Id.* ¶33. Heckmann is a disabled veteran who suffers from post traumatic stress disorder ("PTSD") and obsessive compulsive disorder ("OCD"). *Id.* ¶31. He finds it difficult to part with objects because of his disability and thus his home appears "cluttered." *Id.* ¶32.

### A. The Events of December 20, 2007

On December 20, 2007, Heckmann returned home to find two Nassau County police officers and several Town of Hempstead employees on his property. *Id.* ¶34. Heckmann was told

---

[1] The amended complaint begins with a "Preliminary Statement" of almost three pages that includes numerous factual allegations in unnumbered paragraphs. Defendants have treated this statement as part of the complaint and cited to allegations made within it, and the court will do the same, using the citation "Prelim Stmt."

by Nassau County Police Officer Damian Ramos that "while investigating a shooting nearby, a police officer smelled gas coming from Mr. Heckmann's property." *Id.* ¶¶35-36. The officers entered the residence without plaintiff's consent, *id.* Prelim. Stmt, and that subsequently, fire department, building department, and water department employees were called to the house. *Id.* ¶36. Plaintiff states that no gas was leaking at the property. *Id.* ¶37.

The building department employees entered the home and "declared the residence 'unfit for human occupancy.'" Am. Compl., Prelim. Stmt. According to plaintiff, upon seeing the home, "defendants concluded that the occupant of the property was mentally incompetent." *Id.* ¶39. The house was boarded up with wood and nails at the direction of Town employees over plaintiff's objection. *Id.* ¶¶40, 43. When Heckmann asked why his house was being boarded, he was told by one of the Town defendants that the property violated the housing code. *Id.* ¶46. Heckmann's request for an opportunity to correct any defect was ignored, *id.* ¶¶49-20, as were his requests to enter the house to get medication or money, or to rescue his cat. *Id.* ¶¶51-53. He was told to stand 50 feet away from the home as the windows were boarded up, *id.* ¶54, and was ultimately told by Officer Ramos to leave the property and "to 'go to social services, they know all about it.'" *Id.* ¶¶59-60. Plaintiff left the property "fearing arrest." *Id.* ¶61. He traveled three hours round trip to the Veterans Administration hospital to obtain his medication, and spent the night in a motel. *Id.* ¶¶63-64.

The next day, plaintiff met with defendant Schwarz at the Town Building Department. Am. Compl. ¶¶65-66. Schwarz gave Heckmann a "scrap of paper with a short, handwritten list of

vague alleged problems to be corrected within the house" and returned the keys to him. *Id.* ¶71.[2] Schwarz did not condition the return of the keys to the completion of any repairs. *Id.* ¶70.

Schwarz told plaintiff that he had directed that the electricity at the property be turned off the previous day. *Id.* ¶74. In addition, the gas, heat and water had also been shut off by "[o]ne or more of the named defendants" from the Town. *Id.* ¶75. Plaintiff also concludes that one or more of the Town defendants left a water tap open so that when water service was restored, there was a flood and the basement ceiling collapsed. *Id.* ¶88.

Heckmann returned to the property to find all the windows boarded, and that "every window had been broken and the metal tracks were destroyed by the nails." *Id.* ¶72. The plaintiff's cat had been boarded up within the house. *Id.* ¶76. Heckmann then alleges that as he was "[l]eft without a secure or habitable place to live, in December, [he] spent several months sleeping in his car." *Id.* ¶77. No information regarding the whereabouts of the house's other human resident, Ms. Eaton, is provided. In addition, because the house was boarded up and appeared abandoned, numerous thefts have occurred. *Id.* ¶78. Plaintiff also alleges that the house suffered mold and mildew damage due to the lack of air circulation. *Id.* ¶89.

Plaintiff never received any notice of issues or violations regarding the house prior to the December 20, 2007 incident. *Id.* ¶79.

**B. The Incident of May 2010**

The next factual allegations address events that occurred almost 2 ½ years later, in May 2010. Heckman alleges that on May 18, 2010, he went to the Offices of the Building Inspector of

---

[2] This alleged list is not appended to the Amended Complaint, nor has it been provided to the court in the motion papers.

the Town and requested a copy of the Town's file on the property. Am. Compl. ¶90. On that date at those offices, unnamed defendant employees "retaliated against Mr. Heckmann by serving on the plaintiff Appearance Ticket no. 25126, dated May 14, 2010, charging Plaintiff Henry Heckmann with violation of section 107.1.3 of New York Property Maintenance Code, 'Structure unfit for human occupancy.'" *Id.* ¶91.[3] The ticket charged him with lacking electrical service. *Id.* ¶92. Plaintiff provided bills for electrical service to the prosecuting attorney, *id.* ¶93, and the charges were dismissed in the interest of justice on December 16, 2010. *Id.* ¶94.

The factual allegations conclude with the following claim: "To date, the 'unfit for human occupancy' designation has not been lifted and Mr. Heckmann remains unable to lawfully access his home, and remains, essentially, homeless." *Id.* ¶95.

## II. THE CAUSES OF ACTION

Heckmann commenced this action on November, 24, 2010, and filed an Amended Complaint on December 20, 2010. In the Amended Complaint, plaintiff asserts seven causes of action pursuant to §1983, the ADA, and state law. He seeks to recover, *inter alia,* compensatory and punitive damages, injunctive relief, attorneys' fees pursuant to the ADA, and costs and disbursements.

Subsequent to the briefing of the motions to dismiss, Heckmann moved by letter motion to voluntarily dismiss the two state law claims as to the defendant Nassau County police officers. That motion is unopposed. It is recommended that Heckmann's motion be granted, and that the sixth and seventh claims against defendants Ramos and Keane be dismissed. Furthermore, as

---

[3] This document was not appended to the Amended Complaint, nor was it provided to the court in the motion papers.

these were the only claims asserted against these defendants[4] individually, it is recommended that they be dismissed from the case with prejudice.

The sole remaining claim against the County is plaintiff's second cause of action under the ADA. That claim, which names both the Town and the County, asserts that by assuming that Heckmann's house was unfit based on only a "cursory impression," by dismissing his questions, and by directing him to social services, those defendants "acted with impermissible animus against plaintiff on the basis of his mental illness." Am. Compl. ¶99.

The remaining causes of action are asserted against only against the Town and/or its employees. Plaintiff makes three additional claims of ADA violations against the Town only. The third cause of action alleges that the Town discriminated against plaintiff by "stereotyping" in violation of the ADA. *Id.* ¶101. The Town's alleged failure to allow plaintiff additional time to correct any problem is alleged to be actionable as a failure to make "reasonable modifications in policies, practices, or procedures when such modification was necessary to avoid discrimination on the basis of disability" in the fourth cause of action. *Id.* ¶103. In the fifth cause of action, plaintiff claims that the Town retaliated against him by issuing an appearance ticket to him three years after the house was boarded up and in response to plaintiff's request to see the Town's file regarding his property. *Id.* ¶105.

The Town and the seven individual Town defendants are named in the pendent state law claims for trespass (6th cause of action) and negligence (7th cause of action). Finally, plaintiff

---

[4] The only other cause of action implicating the County is for a violation of Title II of the ADA, and even if that claim were to be read to include the officers, individuals are not subject to liability under that statute. *See, e.g., Garcia v. S.U.N.Y. Health Sciences Ctr.,* 280 F.3d 98, 107 (2d Cir. 2001); *Fox v. State Univ. of New York,* 497 F. Supp. 2d 446, 449 (E.D.N.Y. 2007).

asserts a claim pursuant to §1983, stating that the individual Town employees Schwarz, Gunther, Vallarevella, Steppe, Fordsman, Mastracchio, and Bove violated his rights to procedural due process under the Fourteenth Amendment.

## DISCUSSION

I. <u>RULE 12 LEGAL STANDARDS</u>

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.,* 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.,* 421 F.3d 96, 100 (2d Cir. 2005). The same standard is applied when deciding a motion pursuant to Rule 12 (c). *See Hayden v. Paterson,* 594 F.3d 150, 160 (2d Cir. 2010). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 563 (2007). The Court does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting and citing *Twombly,* 550 U.S. at 556-57) (internal citations omitted).

II. <u>ADA CLAIMS[5]</u>

Plaintiff's claims under the ADA arise under Title II of the Act, which provides in

---

[5] Defendants discuss the viability of a claim made under the Rehabilitation Act of 1973, but as plaintiff acknowledges in his opposition papers, he has, as yet, made no such claim. Pl. Opp. to County motion, at n.1, DE [28].

7

pertinent part that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §12132. To establish a claim under this section, plaintiff must show "(1) that he is a 'qualified individual' with a disability; (2) that he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to his disability." *Hargrave v. Vermont,* 340 F.3d 27, 34-35 (2d Cir. 2003) (citing 42 U.S.C. §12132). As discussed below, plaintiff has failed to state a claim under the ADA.

The defendants argue that plaintiff's ADA claims must be dismissed as he has failed to plead sufficient facts to demonstrate that he was a qualified individual with a disability. In this Circuit, a three-step process is used to determine whether a plaintiff has a disability protected by the ADA: "(1) 'whether the plaintiff suffered from a physical or mental impairment,' (2) whether 'the life activity upon which the plaintiff relied . . . constitutes a major life activity under the ADA,' and (3) whether 'the plaintiff's impairment substantially limited [the] major life activity identified.'" *McElwee v. County of Orange,* 2011 WL 4576123, at *5 (S.D.N.Y. Sept. 30, 2011) (alterations in original) (quoting *Jacques v. DiMarzio, Inc.,* 386 F.3d 192, 201 (2d Cir. 2004)). The defendants concede that plaintiff's allegations that he has PTSD and OCD establish that he suffers from a mental impairment. *See* County Mem. at 8 (citing 45 C.F.R. §84.3 (j)(2)(i) defining mental impairment as "any mental or psychological disorder, such as . . . emotional or mental illness"); Town Mem. at 5 (same).

The second and third steps of determining whether plaintiff has a disability protected by

the ADA requires analysis of what activity or activities are affected by plaintiff's impairment, whether any such activity is a major life activity under the statute, and whether plaintiff's impairment substantially limited that activity. Under the ADA, "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. §12102(2)(A). Dismissal is appropriate where a plaintiff fails to allege how an impairment limits a major life activity. *See, e.g., Baptista v. Hartford Bd. of Educ.,* 427 Fed.Appx. 39, 42 (2d Cir. 2011).

The amended complaint contains only one allegation regarding the impact of Heckmann's impairment on his life – it "makes it difficult for him to part with certain objects, causing his home to appear cluttered." Am. Compl. ¶32. This statement alone does not identify a "major life activity" and as such, does not satisfy plaintiff's burden. Heckmann argues that his complaint offers enough information to "plausibly conclude that his mental illness substantially limits several major life activities." Pl. Opp. at 11. Despite plaintiff's suggestion, a court is not required to infer disability merely because a plaintiff has alleged a particular medical condition. *See Hedges v. Town of Madison,* 2012 WL 101199, at *2 (2d Cir. Jan. 13, 2012) (no inference of disability required where plaintiff only alleged "a variety of medical conditions"); *Mary Jo C. v. New York State & Local Ret. Sys.,* 2011 WL 1748572, at *7 (E.D.N.Y. May 5, 2011) (dismissing Title II ADA cause of action for failure to state a claim where plaintiff alleged a mental illness, but did not "allege any additional facts plausibly suggesting that such mental illness substantially limited one of more of her major life activities"). As plaintiff has failed to allege impairment of a major life activity, he has not adequately pled that he is a qualified individual with a disability.

Plaintiff argues in opposition that he should be given an opportunity to further amend his complaint to cure any pleading defect, and has provided sample allegations regarding his disability and its effect upon his major life activities. Even assuming that he were able to provide details regarding the degree of his impairment to the extent necessary to satisfactorily plead that he was a "qualified individual with a disability," his amended complaint further fails to provide allegations that he was discriminated against by a public entity and that the discrimination was due to his disability. He has provided no proposed allegations that would cure these defects, and based upon the limited facts provided to date, it is unlikely that he could do so.

The allegations concerning the actions of the County police officers are extremely limited; indeed, plaintiff acknowledges in his opposition papers that the County and its officers "were responsible for setting the course of events here concerned in motion," Pl. Opp. at 2, but are not alleged to have performed any of the actions that resulted in damage to plaintiff's property. At the time the officers smelled gas and called the Town, there is not a single allegation that plausibly suggests that the police officers even *knew* about plaintiff's disability, much less took action *because* of it. Although the complaint states that the County "acted with impermissible animus," Am. Compl. ¶99, this conclusory statement is unsupported by any factual allegations. Absent a plausible allegation that the officers acted because of plaintiff's disability, no ADA claim exists against the County.[6]

---

[6] The County also argues that the amended complaint must be dismissed because it was never served with a summons. There is a factual dispute as to this question – plaintiff has offered an affidavit of service dated December 17, 2010 that reflects service of both a summons and the original complaint, *see* Gioeni Aff. of Service, DE [15-5], and the County has submitted, as part of its reply papers, an affidavit from its attorney stating that "[t]he County Defendants are not in possession of a Summons as of the date of this Reply." Laserna Aff. ¶6, DE [31]. In light of the findings *supra* regarding the gross deficiencies in the amended complaint and the resulting

The allegations concerning the Town employees, while vague, are more far-reaching in that they cover possible interactions with plaintiff subsequent to his return to the property on December 20, 2007. None of these allegations, however, plausibly suggest that any action taken by the Town defendants was taken with their knowledge of plaintiff's alleged disability or because of it. Plaintiff's claim of retaliation is equally unsupported by any allegation that a Town employee had knowledge of plaintiff's disability and took steps because of it. Thus, even if plaintiff were a qualified individual with a disability, he has not stated a cause of action of ADA discrimination against the Town.

### III.  CLAIM UNDER §1983

Plaintiff claims that the individual Town defendants violated his right to procedural due process by declaring his "house unfit and prohibiting his entry without any prior notice or opportunity to be heard or to correct the alleged problems before such property was declared unfit." Am. Compl. ¶97.[7] To establish a procedural due process claim, plaintiff must show that he "possessed a protected liberty or property interest, and that he was deprived of that interest without due process." *McMenemy v. City of Rochester,* 241 F.3d 279, 286 (2d Cir. 2001) (quoting *Hynes v. Squillace,* 143 F.3d 653, 658 (2d Cir. 1998)). While the requirements of due process ordinarily mandate notice and a hearing, "a predeprivation procedure is not required when there is

---

recommendation that the motion to dismiss be granted, it is unnecessary to hold further evidentiary proceedings regarding the service of the summons at this time. If, however, Judge Feuerstein declines to adopt this recommendation, or if plaintiff seeks leave to amend his complaint as to the County, it is recommended that a traverse hearing be held.

[7] The Town argues in part that it cannot be liable under §1983 because plaintiff failed to allege a municipal policy. I need not address this argument, however, as plaintiff's §1983 claim is stated only against the individual Town defendants and not the Town itself.

a genuine emergency that requires urgent action and an adequate postdeprivation remedy is available." *DePietro v. City of New York,* 2010 WL 449096, at *6 (E.D.N.Y. Feb. 2, 2010) (citation omitted). As the Supreme Court has acknowledged, "the necessity of quick action by the State or the impracticality of providing any meaningful predeprivation process, when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking, can satisfy the requirements of procedural due process." *Parratt v. Taylor,* 451 U.S. 527, 539 (1981), *overruled on other grds by Daniels v. Williams,* 474 U.S. 326 (1986). In an emergency situation, "the due process guarantee is offended only when an emergency procedure is invoked in an abusive and arbitrary manner; therefore, there is no constitutional violation unless the decision to invoke the emergency procedure amounts to an abuse of the constitutionally afforded discretion" of the government official. *Catanzaro v. Weiden,* 188 F.3d 56, 62 (2d Cir. 1999) (citing *Hodel v. Virginia Surface Mining & Reclamation Ass'n,* 452 U.S. 264, 302-03 (1981)). Ultimately, the inquiry is "twofold: whether there was an emergency that required immediate action, and whether adequate post-deprivation remedies were available." *Reynolds v. Krebs,* 2008 WL 788603, at *4 (W.D.N.Y. Mar. 20, 2008) (citing *Catanzaro,* 188 F.3d at 61-62).

The amended complaint clearly alleges that the Town employees took the action of boarding up his home on December 20, 2007 without giving him either notice or an opportunity to be heard. It also suggests that there were indicia that emergency action on the part of the Town may have been necessary: the detection of a possible gas leak by the police officers, various possible building code violations, and the plaintiff's own acknowledgment regarding his inability to part with items and the resulting "cluttered" appearance of his home. Plaintiff has not,

12

however, provided additional factual allegations that would allow the court to draw the reasonable inference that the Town employees' actions were not in response to an emergency but rather were arbitrary or abusive, or that post-deprivation remedies were not available to him from December 21, 2007 forward. Thus, plaintiff has failed to state a claim for procedural due process in the amended complaint and the motion to dismiss should be granted. As plaintiff may be allege facts supporting such a claim, it is further recommended that he be allowed to replead this cause of action.

## IV.    STATE LAW CLAIMS

Finally, plaintiff claims that both the Town and the individual Town defendants are liable for violations of state law. The defendants argue that under state law, they are entitled to qualified immunity from suit. The court need not address this argument, however, as the state law claims are barred by plaintiff's failure to file a notice of claim.

As a threshold matter, I note that recommendation of dismissal on this ground is *sua sponte.* Although the Town defendants' first affirmative defense in their answer is that the plaintiff failed to file a notice of claim as required by §50-e, *see* Ans., ¶7, DE [9], they did not raise this argument in their papers. While the court has the power to dismiss a cause of action *sua sponte* for failure to state a claim, a plaintiff must be "given notice and an opportunity to be heard." *Wachtler v. County of Herkimer,* 35 F.3d 77, 82 (2d Cir. 1994) (internal quotation omitted). Although plaintiff has not yet been given notice and an opportunity to be heard on this point, his receipt of this Report and Recommendation will provide the notice, and plaintiff's ability to timely file objections, including any evidence that notices of claim were properly and timely served, will afford him an opportunity to be heard. *See, e.g., 3801 Beach Channel, Inc. v.*

13

*Shvartzman,* 2007 WL 2891119, at *1 (E.D.N.Y. Sept. 28, 2007).

New York law requires service of a notice of claim as a condition precedent to the commencement of a tort claim against a municipality, such as the Town. Specifically, §50-i of the Municipal Law provides in pertinent part that:

> No action or special proceeding shall be prosecuted or maintained against a . . . town . . . for personal injury, wrongful death or damage to real or personal property alleged to have been sustained by reason of the negligence of such . . . town . . . or of any officer, agent or employee thereof . . . unless, (a) a notice of claim shall have been made and served upon the . . . town . . . in complaince with section fifty-e of this chapter.

N.Y. Gen. Mun. Law §50-i(1). Section 50-e provides that a notice of claim must be served "within ninety days after the claim arises." N.Y. Gen. Mun. Law §50-e. In addition, §50-i requires that the complaint contain an allegation stating that at least 30 days have passed since service of the notice of claim. "Notice of claim requirements are generally strictly construed, and failure to comply with the requirements typically results in dismissal due to failure to state a cause of action." *Crippen v. Town of Hempstead,* 2009 WL 803117, at *15 (E.D.N.Y. Mar. 25, 2009) (quoting *Hardy v. New York City Health & Hosp. Corp.,* 164 F.3d 789, 793-94 (2d Cir. 1999) (internal quotations and citations omitted)). As there is no allegation or any suggestion whatsoever that a notice of claim was served upon the Town, the state law claims should be dismissed.

The state law claims against the Town employees should also be dismissed. Although the employees are named in their individual capacities, there is not a single allegation that can be plausibly construed to support individual liability. As the Town defendants were acting within the scope of their employment, they too were entitled to notices of claim. *See Sandy Hollow Assocs.*

*LLC v. Inc. Village of Port Washington N.,* 2010 WL 6419570, at *18 (E.D.N.Y. Sept. 6, 2010). Absent service of the notice and the requisite allegation regarding such service, the state law tort claims against them are barred as well. *See generally Crippen,* 2009 WL 803117, at *16.

Even if notice of claim had been timely served on the Town or its employees, state law further requires that subsequent to such service, "the action or special proceeding shall be commenced within one year and ninety days after the happening of the event upon which the claim is based." N.Y. Gen. Mun. Law §50-i(1)(c). The events forming the basis for plaintiff's trespass and negligence claims occurred on December 20, 2007, but the complaint was not filed until November 24, 2010, well beyond the one year and ninety day limit. Accordingly, plaintiff's state law claims against the Town and its employees are time-barred and should be dismissed.

## CONCLUSION

For the reasons set forth it is respectfully recommended that:

- Plaintiff's motion, DE [43] to voluntarily dismiss the state law claims against defendants Ramos and Keane be granted, and that those defendants be dismissed;

- Defendant Nassau County's motion to dismiss, DE [24], be granted in its entirety; and

- Defendant Town of Hempstead's motion to dismiss, DE [35], be granted with leave to replead the §1983 procedural due process claim.

A copy of this Report and Recommendation is being sent to counsel for all parties by electronic filing on the date below. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days. *See* 28 U.S.C. §636 (b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a) and 6(d). Failure to file objections within this period waives the right to appeal the District Court's Order. *See Ferrer v. Woliver,* 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008);

*Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
February 24, 2012

/s/ Gary R. Brown
GARY R. BROWN
United States Magistrate Judge